IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

**FILED**

2017 MAY 30  PM 6: 06

R. ALEXANDER ACOSTA,        §
Secretary of Labor, United States     §
Department of Labor,             §
       Plaintiff,                §
                             §
v.                            §       EP-16-CV-282-PRM
                             §
FIVE STAR AUTOMATIC FIRE     §
PROTECTION, LLC,           §
       Defendant.           §

## ORDER GRANTING MOTION TO COMPEL AND GRANTING IN PART PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER

Before the Court is a Motion to Compel filed by Defendant Five Star Automatic Fire Protection, LLC ("Five Star" or "Defendant") on April 28, 2017 (ECF No. 23), as well an Emergency Motion for Protective Order filed by the Plaintiff, R. Alexander Acosta, Secretary of Labor ("DOL" or "Secretary"). (ECF No. 26).[1]  This Court held a hearing on both motions on May 24, 2017.   Appearing for the parties were Mia F. Terrell for the Secretary and Robert Blumenfeld on behalf of Five Star.   For the reasons stated below, the Court grants Five Star's Motion to Compel, and grants in part the Secretary's Emergency Motion for a Protective Order.

## I.  FACTS AND PROCEDURAL HISTORY

The complaint filed on July 7, 2017, by the Secretary alleges that Five Star failed to pay its employees proper overtime pay and failed to maintain accurate records of hours worked during the period of September 23, 2013, through September 20, 2015, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 28 U.S.C. § 201 *et seq.* (Cmpl., ECF No. 1 pp.1-3). The

---

[1]  Both Motions were referred to this Court by the U.S. District Court, the Honorable Philip R. Martinez presiding, on May 17, 2017.   See Order Referring Motions to United States Magistrate Judge (ECF No. 33).

Secretary also seeks injunctive relief against Five Star to prohibit it from any future overtime violations. *Id.* at p. 4. The Secretary's allegations of unpaid overtime are premised on its belief that Defendant, a fire protection system installer for new and existing buildings, would require an employee to report for a pre-shift time period which was unpaid, during which the employee prepared for the beginning of the paid shift. *Id.* at p. 2. Additionally, the Secretary alleges that there were unpaid, post shift periods. *Id.* Five Star denies these allegations. (Answer, ECF No. 5)

## A. Defendant Five Star's Motion to Compel

On April 28, 2017, Five Star filed a Motion to Compel (ECF No. 23) seeking addresses and telephone numbers for all 54 claimants, as well as an additional deposition with DOL Wage and Hour Investigator Sandra Alba ("Investigator Alba") during which she would be required to answer all questions propounded to her during the prior deposition.[2] In response, the DOL asserted that Five Star already had the addresses and telephone numbers for the claimants, and that because the DOL properly asserted the government's informer privilege, a second deposition of Alba was unwarranted. (ECF No. 24). In its Reply (ECF No. 29), Five Star withdrew its request for the addresses and telephone numbers, but requested that the Court compel the Government to produce unredacted statements from any testifying witnesses immediately. This request was made more than a month after the close of discovery and within the pretrial portion of the litigation. During the hearing, Five Star summarized its request as follows: (1) unredacted statements of any testifying witnesses; (2) redacted statements from current and former employees who will not testify; (3) information relating to how many current and former employees were interviewed; and

---

[2] The Secretary provided to Five Star a list with 54 current and former Five Star employees that the Wage and Hour Division determined "the universe of affected employees." (Plaintiff's Response to Defendant's Motion to Compel, ECF No. 24 at p.2). The Defendant also avers that it has been able to locate 16 of these possible 54 witnesses against it. (Defendant's Reply in Further Support of Defendant's Motion to Compel, ECF No. 29 at p.1).

(4) specific names of who will testify at trial. The Government argued it had no duty to release any such information or statements based on the government's informer privilege.

## B. The Secretary's Emergency Motion for a Protective Order

On May 9, 2017, the Secretary filed an Emergency Motion for Protective Order (ECF No. 26) alleging that Five Star had intimidated and coerced current and former employees by causing them to make and sign statements that are involuntary, and which contain false and inaccurate information. Plaintiff's Motion relies largely on a declaration from Investigator Alba, which includes the purported statements of numerous anonymous Five Star employees, identified in her sworn declaration only as "Employee 1" through "Employee 15". *Id.* at Ex. 1.   The Government seeks a protective order to "prevent the Defendant from violating the anti-retaliation provision of [FLSA] and from continuing to obtain and use coerced statements containing false information in this litigation." *Id.* at p.1.   Among other relief, the Plaintiff's Motion requests an order prohibiting Luis Palacios, Five Star's owner, and Jorge Cobian, Five Star's supervisor, from terminating or threatening to terminate, or retaliating or discriminating in any way against current and former employees of Five Star. (ECF No. 26-4). In response, Five Star filed objections to the declaration of Alba (ECF No. 31), and a brief opposing the motion the motion on substantive grounds (ECF No. 32). During the hearing, the Government acknowledged that Five Star management had not actually communicated an actual or implied threat of any adverse employment action against any current or former employees during the time in which the allegedly involuntary statements were completed.

Trial is set on this matter on June 26, 2017.   Per operation of the Scheduling Order entered by the District Court in this case, witness lists will be required to be exchanged by June 5;

however, at the hearing, the parties indicated that they entered into an agreement to exchange witness lists on June 9. (ECF No 41).[3]

## II.     LAW AND ANALYSIS

### A.     The Government Informer Privilege

At the heart of both the Defendant and the Plaintiffs' motions is the Secretary's apparently extensive reliance on the government informer privilege in the prosecution of its case.  The resolution of these motions requires a thorough analysis of this privilege, from its well-established viability as an investigatory tool for the government, to the implicit tension between its use by the government and the right of a defending litigant to defend itself, particularly as litigation moves closer to trial.

The government informer's privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  The policy reason for the privilege is "the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*  The informer's privilege is recognized in FLSA cases, where enforcement is dependent on the cooperation and statements given by employees. *Brock v. On Shore Quality Control Specialists, Inc.*, 811 F.2d 282, 283 (5th Cir. 1987); *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir. 1972); *Wirtz v. Robinson & Stephens, Inc.*, 368 F.2d 114, 115 (5th Cir. 1966); *Brennan v. Engineered Products, Inc.*, 506 F.2d 299, 302 (8th Cir. 1974). The privilege applies to present as well as former

---

[3] This joint agreement to extend the due date for witness lists was granted by the District Court on May 24, 2017.

employees. *Charles Martin Inspectors*, 459 F.2d at 306.

The privilege is a qualified privilege, rather than an absolute one; it is "limited by the underlying purpose of the privilege as balanced against the fundamental requirements of fairness and disclosure in the litigation process." *Id.* at 305. As stated in *Charles Martin Inspectors*, "[i]n broad terms, the interests to be balanced here are the public's interest in efficient enforcement of the [FLSA], the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial." *Id.* This balancing test, as stated originally in *Roviaro*, requires that when "the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. at 60-61. The defendant must provide a credible need for the information, one which outweighs the important policy considerations in favor of maintaining the privilege. *See Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 373 (7th Cir. 1989). The determination of whether a defendant has shown a "substantial need" for the information is within the court's discretion. *See Brennan*, 506 F.2d at 303. "[T]he policy favoring anonymity of informants must give way when it conflicts with the countervailing policy favoring fair and orderly trials and pretrial procedures." *United States v. Hemphill*, 369 F.2d 539, 542 (4th Cir. 1966)(citing *Robinson & Stephens*, 368 F.2d 114).

Courts have addressed the issue of the timing of the request; that is, at what point in the litigation is the request for informer's privileged information being made? In its 1964 decision in *Wirtz v. Continental Finance & Loan Co., of West End*, 326 F.2d 561, 564 (5th Cir. 1964), the United States Court of Appeals for the Fifth Circuit stated unequivocally that obtaining the names of government informants "is no part of the discovery process before the filing of defensive

pleadings." It nevertheless stated "[w]e do not now have before us the question whether the names of witnesses may be compelled at a pre-trial hearing or at a date shortly before trial . . . ." *Id.*   The Fifth Circuit has held that the Secretary may be compelled to list his witnesses at a pre-trial hearing, stating "There is a substantial difference in a rule requiring disclosure of the names and identity of witnesses during discovery and in one requiring such disclosure at pre-trial." *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939, 943 (5th Cir. 1964); *See also Charles Martin Inspectors*, 459 F.2d at 307 (involving a request for the disclosure of witnesses in the early stages of discovery, the Court noted "the defendant's access to employee statements for impeachment purposes is a matter to be handled by the district court at the pretrial stage of the proceedings."). In *Hooper-Holmes*, the DOL objected to a local rule in the Northern District of Georgia requiring the furnishing of witness lists during the pretrial phase of the litigation, post-discovery. *Id.* at 940-41. The Fifth Circuit noted with approval that the furnishing of the witness list was required by local rule only shortly before trial, and that the rule did not require the disclosure of the names of the witness *during discovery. Id.* at 943.

Other courts have approved of this distinction between disclosure of witnesses or witness statements during the discovery phase of the litigation and pre-trial phase. *Hemphill*, 369 F.2d at 542 (4th Cir. 1966) ("The qualified privilege must give way shortly before and during the trial of an actual enforcement proceeding to the extent that fairness requires the Secretary to furnish lists of prospective witnesses and *written statements obtained from them.*") (emphasis added); *Brennan*, 506 F.2d 299, 303-04 (8th Cir. 1974); *Brock v. Gingerbread House, Inc.*, 907 F.2d 115, 117 (10th Cir. 1989) ("[T]he pre-trial conference is the appropriate occasion generally for identification of witnesses."); *United States v. Julius Doochin Enterprises, Inc.*, 370 F. Supp. 942,

6

944-45 (M.D. Tenn. 1973) ("Thus, . . . where disclosure is inevitable because the informer is to be a witness at trial (but note that this apparently must be proximate in time to the trial) . . . the privilege does not apply or must be set aside."); *Perez v. Kazu Construction, LLC*, No. CV 16-00077 ACK-KSC, 2017 WL 628455 at *6 (D. Haw. Feb. 15, 2017) ("[As trial approaches]" the need for disclosure becomes more acute and the balance of interests shifts.") (citation omitted).

In the instant case, Defendant has demonstrated the requisite substantial and credible need for the information it requests. The case is essentially on the eve of trial. Discovery closed in this matter on March 28, 2017. By agreement, the parties will turn over witness lists on June 9, a little over two weeks before trial. The Secretary has agreed it will turn over a witness list on said date, but had intended not to divulge any witness statements protected by the government informer privilege until after their testimony at trial. No attempt has been made by the Secretary to provide the Defendant even redacted witness statements. During the deposition of Investigator Alba, the Secretary interposed objections and instructed the witness not to answer defense questions regarding, for example, the number of employees she had interviewed, or the job categories of the individual witnesses interviewed, all under the auspices of the government informer privilege.

The DOL has adopted an expansive interpretation of the government informer privilege. It appears that the DOL has taken the view that at least a substantial number of current and former employees which they interviewed during their investigatory process are cloaked by the privilege. To allow the DOL to such a broad view of the privilege, one which in practical terms takes the privilege from a qualified to an absolute privilege, places the defendant at an unfair disadvantage. This is particularly so given that trial is only in a few short weeks. Allowing the DOL's view of the privilege to carry the day would result in a tremendous litigation advantage for the Secretary;

7

however, it is not one sanctioned by the body of case law on the matter. It is difficult to imagine precisely how the defense is supposed to assess the Secretary's theory of Five Star's liability without detailed information regarding what categories of employees, or how many current or former employees, were allegedly underpaid. Furthermore, it is difficult to imagine how this approach to the litigation would allow counsel for the Defendant to make an informed analysis of any potential liability and risk to their client. The DOL represents to the Court that disclosure of the witness statements would essentially divulge their status as government informer witnesses and thereby subject them to retaliation. The Court is not persuaded that the required disclosure of witnesses and their unredacted statements 15 days before trial enhances their risk of retaliation more than disclosing said statements after the witnesses testify at the time of trial, which is what the DOL requests.

The Court ORDERS that the Department of Labor provide, contemporaneously with its disclosure of the witness list, any unredacted statements of any current and former Five Star employees who will testify, as well as the redacted statements of any non-testifying current and former employees. For any non-testifying witness, the redaction shall be as to the name of the employee. The DOL will identify the job categories of the non-testifying employees. Further, the Court ORDERS that Investigator Alba answer an Interrogatory disclosing the number of employees she spoke to as part of her investigation.

### B. Emergency Motion for Protective Order

The Secretary moves this Court to issue a protective order to prevent the Defendant from violating the anti-retaliation provisions of FLSA and to enjoin Five Star from "continuing to obtain and use coerced statements containing false information." (ECF No. 26). Specifically, the motion

moves this Court to

1. Prevent the defendant from retaliating against any current or former employee for participating in the DOL investigation and litigation;

2. Require the Defendant, in the presence of DOL personnel, to read a statement in English and Spanish to Five Star employees informing them of their right to speak to DOL personnel without fear of retaliation or intimidation;

3. Requiring the Five Star to post a worksite poster stating the same;

4. Prohibit Five Star from requiring the submission of false statements from employees with regard to the subject matter of this litigation;

5. Provide costs and expenses to Plaintiff for this motion;

6. Strike as evidence to the Defendant's Motion for Summary Judgment (currently pending before U.S. District Judge Philip R. Martinez) sixteen "involuntary, coerced, false statements" submitted by Five Star as evidence in that filing;

7. All other relief as appropriate.

*Id.*

Federal Rules of Civil Procedure. Rule 26(c) (1) states

A party or any person from whom discovery is sought may move for a protective order . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) Forbidding the disclosure or discovery;

(B) Specifying terms, including time and place or the allocation of expenses, for the disclosure of discovery;

(C) Prescribing a discovery method other than one selected by the party seeking discovery;

(D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discover to certain matters;

(E)  Designating the persons who may be present while the discovery is conducted;

(F)  Requiring that a deposition be sealed and opened only on court order;

(G)  Requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H)  Requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

The Secretary relies on the declaration of Investigator Alba, who relays a number of communications from April 26 through May 1 with 15 unidentified employees of Five Star. (ECF No. 26 Ex. 1). Investigator Alba states "[t]o protect the person making the reports set forth in this Declaration from potential retaliation; I refer to them by a number and not by name." *Id.* at ¶ 5. The complaints include a number of allegations from different employees stating that Five Star management, *inter alia*: oversaw the completion of the forms (*Id.* at ¶ 7); instructed employees on how to fill out the forms (*Id.* at ¶ 5); looked over an employee's shoulders while they filled out the forms (*Id.* at ¶ 13); made an employee change an answer (*Id.* at ¶ 14); improperly translated the forms into Spanish for non-English speaking employees (*Id.* at ¶¶ 16, 17, and 32); and provided forms with only "yes" or "no" answers as options for responses (*Id.* at ¶ 22).   Throughout the Alba declaration are statements that the employees felt intimidated and in fear for their jobs.   Five Star objected to the declaration on hearsay grounds and for lack of a proper foundation. (ECF No. 31 at pp. 1-2). In particular, Five Star takes issue with the affiant's reliance on confidential or anonymous sources. *Id.* Additionally, Five Star supports its response to the motion with two

affidavits, one from owner Palacios and one from Cobian, the supervisor, in which they deny the allegations. (ECF No. 26 Ex. 1 and 2). Significantly, counsel for the Secretary conceded at the hearing that Five Star management had never directly retaliated or threatened to retaliate against any current or former Five Star employee.   Stated differently, the DOL conceded that no adverse employment action was ever communicated by Five Star against any current or former employee.

A number of the cases cited by the Secretary in support of the proposition that a protective order is the proper procedural vehicle to protect the current and former employees from coercive communications with the employer actually demonstrate what would clearly fall into the category of retaliatory or threatening communications. *See Pacheco v. Aldeeb*, 127 F. Supp. 3d 694, 698 (W.D.Tex. 2015) (employer conditioned delivery of paychecks to current employees on the employees' agreement to represent that they have no claims against the defendant; employer offered a pay raise in exchange for dismissal of claims; employer offered to pay employee to persuade other employees to drop claims); *Castillo v. Hernandez*, No. EP-10-CV-247-KC, 2011 WL 1528762 at *4 (W.D. Tex. Apr. 20, 2011) (Cardone, J.) (in a collective action FLSA claim, employer sent a letter to several plaintiffs asking for their Social Security numbers and threatened a potential plaintiff with a possible lawsuit to discourage him from joining the lawsuit). Here, by the Plaintiff's own admission, no retaliatory action has taken place.

Nevertheless, "[s]peech between parties with an ongoing business relationship is inherently conducive to a coercive influence . . . and an employer employee relationship is a salient example of this type of ongoing business relationship." *Id.* (citations omitted). The Court is required in any protective order to provide the narrowest possible relief to protect the respective parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981). While the declaration of Investigator

11

Alba presents evidentiary concerns as raised by the Defendant, the Court will not resolve them here. The Court does find that a pragmatic approach to the issues raised in the Plaintiff's Motion is to require any current and former employees to receive the notice proposed by the DOL in its "Supplement To The Proposed Order On His Emergency Motion For Protective Order" entitled "Notice to Employees of Five Star Automatic Fire Protection, LLC". (ECF No. 30 at p. 4). That notice is hereby incorporated to this Order by reference. Specifically, Five Star will provide the notice to any current and former employees within 10 days of the entry of this Order.  For any employees that Five Star has indicated it cannot contact, the Notice will be mailed return receipt requested to the former employees' last known address. The Court further finds that the remaining relief requested by the Secretary, including a motion to strike employee statements, is overly broad, and beyond the scope of the matters referred to this Court by the District Court for resolution.  Therefore, the Court GRANTS in part the Plaintiff's Emergency Motion for Protective Order.

### C. Attorney's fees

Both parties have requested fees to be assessed against the other. In this case, the Court determines that each party should bear its own costs.

It is so ORDERED.

SIGNED and ENTERED on May 30, 2017.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE