## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

R. ALEXANDER ACOSTA,     §
Secretary of Labor, United     §
States Department of     §
Labor,     §
    Plaintiff,     §
             §       EP-16-CV-282-PRM
v.     §
             §
FIVE STAR AUTOMATIC     §
FIRE PROTECTION, LLC,     §
    Defendant.     §

## <u>MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

On this day, the Court considered Defendant Five Star Automatic

Fire Protection's ("Five Star") "Motion for Summary Judgment" (ECF

No. 22) [hereinafter "Motion"], filed on April 28, 2017, Plaintiff R.

Alexander Acosta, Secretary of Labor, United States Department of

Labor's ("DOL"), "Response to Defendant's Motion for Summary

Judgment" (ECF No. 35) [hereinafter "Response"], filed on May 19,

2017, and Five Star's "Reply to [DOL's] Response in Opposition to [Five

Star's] Motion for Summary Judgment" (ECF No. 40) [hereinafter

"Reply"], filed on May 22, 2017, in the above-captioned cause.[1]  After due consideration, the Court is of the opinion that Five Star's Motion should be denied for the reasons set forth below.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case stems from the DOL's allegations that Five Star did not properly compensate some of its current and former employees from 2013 to 2015, and failed to maintain accurate payroll records in violation of the Fair Labor Standards Act ("FLSA").  Compl. 1–2, July 7, 2016, ECF No. 1.  Specifically, the DOL attaches a list to its Complaint ("DOL List") containing the names of fifty-four current and former employees for whom back wages are sought.  Compl. Ex. A.  The DOL alleges that the employees did not include pre- and post-shift time that they worked on their time cards and that the employees were not properly compensated for this time.  Compl. 2.  Five Star denies that it failed to properly compensate any of its employees.  Mot. 2.

---

[1] The DOL also untimely submitted a "Supplemental Response to [Five Star's] Motion for Summary Judgment" (ECF No. 51) on July 21, 2017. Five Star then filed a "Response in Opposition to Plaintiff's Motion to Supplement the Summary Judgment Record" (ECF No. 53).  The Court did not consider the DOL's untimely supplemental briefing in adjudicating Five Star's Motion.

## A.   Five Star

Five Star is a business located in El Paso, Texas that designs and installs fire sprinkler systems.  Mot. Factual App. 1 (ECF No. 22-1) [hereinafter "Motion Appendix"]; Resp. Factual App. 2 (ECF No. 35-1) [hereinafter "Response Appendix"].  Luis Palacios is the owner and President of Five Star,[2] Veronica Palacios is Luis Palacios's wife and Vice-President of Five Star,[3] Jorge Cobian is a "Construction Supervisor,"[4] and Mary Ann Morales is the Payroll Clerk.[5]

Five Star employs the following categories of "construction employees:"[6]  (1) foremen; (2) helpers, and (3) sprinkler-fitter apprentices.  Mot. App. 2; Resp. App. 2.  These construction employees

---

[2] Mot. Aff. of Luis Palacios, at 5 (ECF No. 22-6) [hereinafter "First LP Affidavit"].

[3] Resp. Ex. Dep. of Veronica Palacios, at 8, 19–20 (ECF No. 35-7) [hereinafter "VP Deposition"].

[4] Cobian understood his official position title to be Construction Supervisor while Mr. Palacios referred to Cobian as a "lead superintendent."  *Compare* Resp. Ex. Dep. of Jorge Cobian, at 6, 36 (ECF No. 35-6) [hereinafter "Cobian Deposition"] *with* Resp. Ex. Dep. of Luis Palacios, at 103 (ECF No. 35-5) [hereinafter "LP Deposition"].

[5] Resp. Ex. Dep. of Mary Ann Morales, at 9 (ECF No. 35-8) [hereinafter "Morales Deposition"].

[6] Throughout the record, the parties also refer to these specific employees as "field employees."

perform most of their installation work away from Five Star's
headquarters at project sites and are paid on an hourly basis.  Mot.
App. 2; Resp. App. 2.  Five Star generally uses "two-man crews"
consisting of a foreman and a helper to perform work at project sites in
El Paso County.  Mot. App. 3; Resp. App. 2.

During the relevant time period, Five Star required that
construction employees record the total number of hours they worked
on time cards, but did not require that employees include the start or
end time on the time cards.  Mot. App. 6; Morales Dep. 25–26

### B.   The DOL Investigation and Report

The DOL assigned its investigator Sandra Alba
("Investigator Alba") to conduct an investigation into Five Star's
company practices to determine whether Five Star had violated
the FLSA.  Resp. Ex. Dep. of Sandra Alba, at 13 (ECF No. 35-3)
[hereinafter "Alba Deposition"].[7]  During her investigation,
Investigator Alba visited the Five Star facility on four separate
occasions and also visited some of the project work sites.  Alba

---

[7] Investigator Alba kept detailed notes regarding her investigation
including the dates and amount of time she spent conducting tasks such
as interviewing employees in a "case diary."  Alba Dep. 23, 38, 72.

4

Dep. 22, 84–85.  While at the Five Star facility, Investigator Alba interviewed various employees.  Alba Dep. 24: 14–18.  Investigator Alba also interviewed current and former employees outside of the Five Star facility via telephone and in person on multiple occasions.  *Id.* at 22–23.

During her first visit to the Five Star facility, Investigator Alba met with Mrs. Palacios.  Alba Dep. 39–42; VP Dep. 19–20. During this initial visit, Mrs. Palacios provided Investigator Alba with general information regarding company practices and the employees' day-to-day activities.  Alba Dep. 41–42.  Mrs. Palacios also gave Investigator Alba a tour of the Five Star facility, *id.* at 42, after which Investigator Alba also requested time and payroll records for the previous two years for all Five Star employees. Alba Dep. 42; VP Dep. 20.

During her second visit to the Five Star facility, Investigator Alba met briefly with Mrs. Palacios again and was provided with a list of employees and dates of employment for the relevant time period but was not provided with complete payroll records for all employees.  Alba Dep. 32–33.  Instead, Investigator Alba was

provided with the two most recent payroll records. *Id.*
Investigator Alba avers that she never received the complete
payroll records that she requested. *Id.* at 32. During that same
visit, Investigator Alba also began conducting employee interviews
at the Five Star facility. *Id.* at 32–33; VP Dep. 20.

During her third visit to the Five Star facility, which
Investigator Alba referred to as the "preliminary final conference,"
Investigator Alba met with both Mr. and Mrs. Palacios to inform
them that she had determined, from her investigation, that Five
Star had violated the FLSA. Alba Dep. 30–31; VP Dep. 22–23.
Mr. and Mrs. Palacios denied that any employees were owed any
money. LP Dep. 172; VP Dep. 23; Alba Dep. 30. According to
Investigator Alba, she also informed Mr. and Mrs. Palacios that
back wages would need to be calculated for all construction
employees for the relevant time period, and Mr. Palacios
requested additional time to consult with his attorney. Alba Dep.
30–32.

During her fourth and final visit to the Five Star facility,
which Investigator Alba referred to as the "final conference,"

6

Investigator Alba met with Mr. and Mrs. Palacios again to ascertain whether Mr. Palacios had computed the back wages and to discuss her computation of back wages with them. *Id.* at 31–32. Investigator Alba claims that Mr. Palacios indicated that he was not in agreement with the findings, and therefore, had not computed back wages. *Id.* at 34. Investigator Alba asked Mr. Palacios whether he wanted her to show him the documentation but he refused to review it because he was not in agreement that any of the employees were entitled to back wages. *Id.* at 34–35.

Ultimately, Investigator Alba created a document detailing her findings and conclusions as a result of her investigation. *See* Resp. Ex. Certified Narrative and Addendum (ECF No. 35-2) [hereinafter "Report"]. The DOL has provided Investigator Alba's Report as primary evidence of its FLSA overtime claims on behalf of Five Star's employees. *See generally* Resp.

The DOL's Authentication Officer certified the Report as a "true copy of a document in the DOL." Report DL 1-126. The Report details Investigator Alba's conclusion that Five Star did not properly compensate its construction employees for overtime

7

hours worked from September 23, 2013 through September 20, 2015. Report 77–78.[8] Specifically, Investigator Alba included the following findings in her Report.

During the relevant time period, Cobian required that construction employees report to the Five Star facility at 6:30 a.m. (or 6:45 a.m. at the latest) to gather materials needed for the day and load the company vehicles with these materials. *Id.* at 77. Construction employees then reported to job sites at 7:00 a.m. Alba Dep. 34. After construction employees left the project sites at 3:30 p.m. each day, they were required to return the company vehicles to Five Star's facility and would arrive at the Five Star facility anytime between 3:30 p.m. and 4:00 p.m. Report 77.

Construction employees did not include their pre-shift work loading materials into company vehicles or their post-shift work returning the vehicles to the Five Star facility on their time cards. *Id.*; Alba Dep. 90. Consequently, construction employees were not properly compensated for this time. Report 77; Alba Dep. 90.

---

[8] The Report is numbered DOL000074 through DOL000080. However, for purposes of simplicity, the Court will only provide the last two numbers of each page.

Specifically, Investigator Alba concluded that Five Star did not compensate employees on the DOL List for 3.75 hours of overtime per week. Report 78.

Investigator Alba explained during her deposition testimony that she computed back wages in the following manner. In the absence of records, Investigator Alba reconstructed the construction employees' hours based on information that she gathered during her investigation. Alba Dep. 53. Specifically, Investigator Alba determined, based on information that Mrs. Palacios and employees provided to her, that construction employees worked from 7:00 a.m. to 3:30 p.m., five days a week. *Id.* at 34. Consequently, Investigator Alba calculated additional uncompensated time as overtime. *Id.;* 29 U.S.C. § 207(a) (providing that hours worked in excess of forty per week is compensable overtime).

Based on employee interviews, Investigator Alba also used a conservative average for the amount of uncompensated overtime spent pre- and post-shift. For example, employee interviews revealed that employees engaged in uncompensated pre-shift time

lasting anywhere from fifteen to thirty minutes each work day;
Investigator Alba applied the fifteen-minute figure in computing
back wages. *Id.* at 50. Similarly, employee interviews revealed
that employees engaged in uncompensated post-shift time lasting
anywhere from thirty minutes to an hour; Investigator Alba
applied the thirty-minute figure in her back wages computation.
*Id.* at 53.

### C.  Mr. Palacio' s Affidavit and Deposition Testimony and Cobian's Deposition Testimony

As primary evidence in support of its Motion, Five Star has
submitted Mr. Palacios's affidavit along with forms from sixteen current
and former employees asserting that they have been properly
compensated.[9]  First LP Aff.

Mr. Palacios asserts the following in his affidavit:

- Five Star construction employees use an honor system to record all of their time on a company time card.  First LP Aff. ¶ 12.

- The construction employees are instructed to include all work time on their time cards.  *Id.* at ¶ 13.

- Construction employees are "on-the-clock" when they start actual work at Five Star's facility, if any.  *Id.* at ¶14.

---

[9] *See* Section III.D *infra.*

- "Shop employees" deliver the materials that construction employees need to complete projects directly to project sites in advance. The materials are then stored at the site. *Id.* at ¶ 24.

- It is not normally the construction employees' responsibility to load company vehicles with project materials and deliver the materials to the project sites. *Id.* at ¶ 25.

- On rare occasions construction employees might need to load materials needed for projects, which takes between one and two minutes. *Id.*

- Any material amount of time (i.e., over two minutes) that construction employees spend loading, unloading, and delivering materials is considered paid time and the construction workers are paid for all their loading and unloading time. *Id.* at ¶ 15.

Similarly, Cobian asserted during his deposition testimony that construction employees are compensated for time spent returning company vehicles to the Five Star facility, Cobian Dep. 64, and that the majority of time the materials are already at the project sites, *id.* at 28.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute will be found to exist "if the evidence is such that a reasonable jury could return a verdict for the

11

nonmoving party." *Rogers v. Bromac Title Servs., LLC*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted).

"Under Federal Rule of Civil Procedure 56(c), the party moving for summary judgment bears the initial burden of . . . 'identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Rule 56(c) mandates the entry of summary judgment . . . upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 323. Where this is the case, "there can be 'no genuine issue as to any material fact,' since complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* (quoting Rule 56(c)).

In adjudicating a motion for summary judgment, a court "consider[s] evidence in the record in the light most favorable to the

non-moving party and draw[s] all reasonable inferences in favor of that party." *Bluebonnet Hotel Ventures, LLC v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

### B.   FLSA

The FLSA requires covered employers to compensate nonexempt employees at a rate of not less than one and a half times their regular rate of pay for hours worked in excess of forty per work week. 29 U.S.C. § 207(a). To facilitate enforcement, the FLSA also requires a covered employer to keep accurate records "of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." § 211(c). An employer that violates the FLSA is liable for "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." Moreover, "any person who repeatedly or willfully violates [the FLSA], relating to wages shall be subject to a civil penalty not to exceed $1,100 for each such violation." § 216(e)(2).

Additionally, the FLSA grants district court jurisdiction "for cause shown, to restrain [FLSA] violations . . . including . . . the restraint of any withholding of payment of minimum wages or overtime

compensation found by the court to be due to employees under [the

FLSA]." § 217(c).

"An employee seeking unpaid overtime compensation under the

FLSA must first demonstrate that he 'performed work for which he was

not properly compensated.'" *Von Friewalde v. Boeing Aerospace*

*Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009) (quoting

*Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 686–87(1946)).

Pursuant to the seminal case of *Anderson v. Mount Clemens Pottery Co.*,

> [w]here an employer has failed to maintain accurate payroll
> records, an employee carries his burden to establish a prima
> facie case under the FLSA if he shows he performed work for
> which he was improperly compensated and produces some
> evidence to show the amount and extent of that work "as a
> matter of just and reasonable inference."

*Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806 (5th Cir.

2011) (quoting 328 U.S. at 687).  The Fifth Circuit Court of

Appeals has "recognized that the *Mt. Clemens Pottery* standard

allows plaintiffs [including the Secretary of Labor] to establish a

prima facie case for non-testifying employees based on the 'fairly

representational' testimony of other employees." *Id.* at 806.  "The

[C]ourt can award back wages under the FLSA to non-testifying

employees based on the fairly representational testimony of other

14

employees.  Although the [Secretary of Labor's] initial burden under *Mt. Clemens* is minimal, it is not non-existent." *Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 951–52 (4th Cir. 1995).

## III.  ANALYSIS

After considering the summary judgment evidence presented by both parties, the Court concludes that there is a genuine issue of material fact regarding whether the construction employees on the DOL List were properly compensated for all overtime hours worked, during the relevant time period.

### A.    Trustworthiness of Investigator Alba's Report

Five Star argues that the Court should grant summary judgment in its favor because the DOL has failed to provide competent summary judgment evidence demonstrating that Five Star's construction employees worked pre- or post-shift time on an unpaid basis.  Mot. 5.   Specifically, Five Star contends that the Court should disregard the DOL's main evidence to support its claims, the Report, because it is hearsay and untrustworthy. *Id.* at 5–12.

While the Report is hearsay, Federal Rule of Evidence 803(8) "excludes from the hearsay rule certain records and reports." *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991). Notably, Rule 803(8) permits admission of "[a] record or statement of a public office if it sets out: . . . in a civil case . . . factual findings from a legally authorized investigation; and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). "Opinions and conclusions, as well as facts are covered by [Rule 803(8)]." *Moss*, 933 F.2d at 1305.

"The Advisory Committee assumes admissibility of [803(8)] reports in the first instance[;] [t]hus, evaluative reports are presumed not to be excluded under the hearsay rule unless there are indications of untrustworthiness." *Id.* Significantly, "reports generated and compiled in the regular course of Labor Department Law enforcement investigations have been held to be admissible in private cases." *Hotel Emp.'s-Hotel Ass'n Pension Fund v. Timperio*, 622 F. Supp. 606, 608 (S.D. Fla. 1985). "In light of the presumption of admissibility, the party opposing the

16

admission of the report must prove the report's untrustworthiness." *Moss*, 933 F.2d at 1305; *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) ("A party opposing the introduction of a public record bears the burden of coming forward with enough negative factors to persuade a court that a report should not be admitted.").

The Advisory Committee has provided a nonexclusive list of factors, which the Fifth Circuit Court of Appeals has adopted, in determining trustworthiness:  (1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivation or bias problems.  *Moss*, 933 F.2d at 1305

Five Star does not argue that Investigator Alba's investigation was untimely or that she did not have sufficient skill or expertise to conduct the investigation.  *See generally* Mot. Instead, Five Star argues that the Report is untrustworthy for the following reasons.

1. <u>Lack of a Hearing does not Render the Report Untrustworthy</u>

Five Star argues that the lack of a hearing demonstrates the Report's untrustworthiness. Mot. 10. The Court disagrees. "[A] formal hearing is [not] a *Sine qua non* of admissibility under [Rule 803(8)] when other indicia of trustworthiness are present." *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 558 (6th Cir. 1978); *see also United States v. Am. Tel. Co.*, 498 F. Supp. 353, 365 (D.D.C. 1980) ("'[T]he law is that lack of a formal hearing is not necessarily fatal to the reliability of a factual finding under Rule 803(8)(C) where other indicia of trustworthiness are present.").

Here, although there was no formal hearing, Investigator Alba conducted a preliminary final conference and a final conference with Mr. and Mrs. Palacios where she informed them of the results of her investigation and provided them with the opportunity to submit any information they desired to have the DOL consider in connection with the investigation. *See* Report 78–79; Resp. 8; Alba Dep. 31. Investigator Alba even provided Mr. and Mrs. Palacios with an opportunity to calculate the back wages themselves and to review Investigator Alba's back wage

18

calculations, but they declined to do so.  Report 79; Alba Dep. 31–
32.

Moreover, "there is no evidence suggesting that the [DOL]
typically holds a hearing before reporting the results of its . . .
investigations."  *See In re Second Chance Body Armor, Inc.*, 421
B.R. 823, 833 (Bankr. W.D. Mich. 2010) (similarly declining to
deem a governmental report untrustworthy because of a lack of a
hearing where there was no indication that the governmental
agency typically held hearings for such reports).

Thus the Court concludes that the lack of a formal hearing
does not render the Report untrustworthy.  *See Ruiz v. Fernandez*,
949 F. Supp. 2d 1055, 1062–63 (E.D. Wash. 2013) (similarly
holding that that a DOL report was trustworthy despite the lack
of a formal hearing where a "final conference" was held and the
employer was informed of the investigation results).

### 2.    The DOL Has Adopted the Report

Five Star also claims that the Report is untrustworthy
because it was not "formally adopted by the DOL as an official
finding of the agency."  Mot. 11.  Five Star cites to a Fifth Circuit

case and a Second Circuit case excluding reports that did not
reflect the findings of the agency to support its contention. *Id.*
(citing *Smith v. Isuzu Motors, Ltd.*, 137 F.3d 859 (5th Cir. 1998);
*City of New York v. Pullman, Inc.*, 662 F.2d 910 (2d Cir. 1981)).

It is apparent from the record that Five Star's contention
that the DOL has failed to formally adopt the Report is false.  As
mentioned above, the DOL custodian of records has placed the
official DOL seal on the Report, indicating that the DOL has
adopted it.  Report 26.  Significantly, the DOL relies primarily on
the Report in its Response and has produced the Report as
primary evidence of its claims on behalf of Five Star's employees.
"The [R]eport also appears to be final, as it contains a series of
narratives with the last narrative indicating that a 'final
conference was held . . . and setting forth the investigator's
conclusions and recommendations" as well as an addendum.  *See
Ruiz*, 949 F. Supp. 2d at 1062.  Accordingly, the Court concludes
that the DOL has adopted the Report.  *Cf. Sullivan v. Dollar Tree
Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) (rejecting DOL
report where the document did "not appear even to be final report,

20

as distinct from an internal draft," where the DOL "did not issue
the report or send it to either party at any time before [the
pertinent] litigation," and where the report became available "only
because [the plaintiff] filed a request pursuant to the Freedom of
Information Act").

      3.    <u>Five Star Has Failed to Demonstrate Investigator
              Alba was Biased</u>

Five Star next argues that there "could be possible bias
underlying the investigation." Mot. 11. Specifically, Five Star
highlights the fact that the DOL "refuses to disclose why it
investigated Five Star" and claims that the investigation "could be
[the result] of nothing more than a complaint by a competitor or
disgruntled former customer." *Id.* The Court determines that
Five Star's argument regarding possible bias is unconvincing. The
fact that Five Star has not disclosed the reason for its
investigation does not indicate that the Report is untrustworthy.
Five Star has not suggested that Investigator Alba herself is
biased or has any interest in this litigation. Investigator Alba (as
a neutral party) interviewed employees, as a part of her
investigation, to determine whether Five Star was in violation of

21

the FLSA.  Consequently, Investigator Alba conducted her own independent investigation, and—even in the unlikely event that Five Star's allegations are true—the reason for the investigation's inception is not pertinent to whether the investigation itself was conducted in an impartial manner.  See Alba Dep. 14 ("The matter or the reason of the investigation is not revealed, but they're all handled . . . in the same manner.").  In sum, the Court concludes that Five Star's speculation regarding the reason for the investigation is not sufficient to demonstrate the Report's untrustworthiness absent any indication that Investigator Alba—as the Report's author—was motivated by any bias or ill will.  *See Gross v. King David Bistro, Inc.*, 84 F. Supp. 675, 677 (D. Md. 2000) ("Admissibility of government reports is assumed because of the general reliability of public agencies in conducting their investigations and the absence of a motive other than informing the public.").

4.   Investigator Alba's Lack of Personal Knowledge Does not Render the Report Untrustworthy

Five Star also argues that the Report is untrustworthy because Investigator Alba "[d]id not personally witness or observe

any activities or work by Five Star employees prior to drafting and completing [the Report]." Mot. 7. Five Star's argument regarding Investigator Alba's lack of personal knowledge is similarly unpersuasive. Public records and reports often "embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions." 2 McCormick on Evid. § 296 (7th ed.). "In fact, it is unlikely that the report's author(s) will have any personal knowledge of the incidents investigated. Therefore, lack of personal knowledge is not a proper basis for exclusion of a report otherwise admissible under Rule 803(8)." *Alexander v. CareSource*, 576 F.3d 551, 562–63 (6th Cir. 2009). Accordingly, the Court concludes that the mere fact that Investigator Alba did not witness the FLSA violations occurring firsthand does not indicate that the Report is untrustworthy.

> 5.   Arguments Regarding the Report's Accuracy and Completeness

Several of Five Star's remaining arguments attack the Report's accuracy and completeness, which do not bear upon the Report's admissibility but upon the weight of the evidence. *See*

*Moss*, 933 F.2d at 1307 ("[G]eneral complaint[s] that the reports are incomplete and inaccurate are matters going to the weight of this evidence and not its admissibility.") (internal quotation marks omitted). For example, Five Star argues that the Report demonstrates that Investigator Alba "failed to understand Five Star's operations and pay practices" because she "assumed that construction workers consistently work a 7:00 a.m. to 3:30 p.m. daily shift." Mot. 9. Five Star contends that "[w]hile this represents the main shift worked, Five Star's construction employees actually work[ ] varying shifts." *Id.* Five Star also argues that construction employees "often meet directly at the project sites[,] . . . often work different shift hours in the summer, and they work occasional afternoon/evening shifts." *Id.* Additionally, Five Star contends that Investigator Alba's report "is based upon loading and unloading that rarely takes place." *Id.* at 10. Five Star further argues that Investigator Alba's records are inaccurate in describing the amount of time spent on the investigation. *Id.*

These arguments relate to the accuracy of Investigator Alba's conclusions in the Report and to the alleged incompleteness of the Report, given that Investigator Alba allegedly did not take into account the employees' varying shift schedules. "In making the trustworthiness determination required by Rule 803, courts should not focus on questions regarding the accuracy or completeness of the document's conclusions." *Moss*, 933 F.2d at 1307. Accordingly, the Court determines that Five Star's arguments regarding alleged inaccuracies in the Report are inapposite to the Court's trustworthiness determination. *See id.* ("It follows that in determining the trustworthiness under Rule 803(8)(C), credibility of the report itself or the testimony in the report are not the focus.").

### 6.   Sufficient Sample of Employees

Five Star also argues that "[t]here is no indication that [Investigator Alba] interviewed a sufficient sample of employees." Mot 7. Further, Five Star asserts that 'there is no evidence that [Investigator Alba] actually interviewed employees at all based on the DOL's refusal to identify where it obtained its employee-

provided information about Five Star's pay practices." *Id.* The
Court first notes that Investigator Alba's deposition testimony,
Mrs. Palacios's deposition testimony, and the Report indicate that
Investigator Alba did in fact interview construction employees.
However, the Court agrees with Defendant that the lack of any
indication in the Report regarding the number of employees that
Investigator Alba interviewed is troubling because the Court
cannot ascertain whether the number of employees that she
interviewed provides a sufficient basis for the Report's
conclusions.  As the Fifth Circuit has held, the trustworthiness
inquiry requires the Court to "determine primarily whether the
report was compiled or prepared in a way that indicates that its
conclusions can be relied upon." *Moss,* 933 F.2d at 1307.

Nevertheless, the Court determines that the lack of specific
information regarding the sample size alone is insufficient to
demonstrate that the Report is untrustworthy.  As outlined above
Five Star has the burden of coming forward with enough negative
factors to demonstrate the Report's untrustworthiness.  Here,
while the lack of any information in the report regarding the

sample size is one negative factor, several other factors actually

demonstrate that the Report was compiled in a manner that

indicates that its conclusions can be relied upon:  Investigator

Alba visited the Five Star facility on four separate occasions and

also visited project sites (indicating that the Investigator Alba was

thorough in her investigation) and spent almost the entirety of one

of her visits interviewing employees—although Investigator Alba

did not indicate the precise number of employees she interviewed,

both Mrs. Palacios's and Investigator Albas's deposition

testimonies indicate that Investigator Alba interviewed several

employees.  Investigator Alba also interviewed Mrs. Palacios to

gather information and provided both Mr. and Mrs. Palacios with

an opportunity to produce payroll records to rebut her findings—

and to complete the calculations of back wages themselves.

Therefore, the facts regarding the circumstances of Investigator

Alba's investigation convince the Court that it is trustworthy and

that its conclusions are ones on which the Court may rely.

Consequently, in light of the Report's presumptive

admissibility, and mindful that the burden rests upon Five Star to

prove the Report's untrustworthiness, the Court concludes that Five Star has failed to carry its burden in demonstrating that the Report is untrustworthy; the Court further concludes that the Report is admissible.  Five Star "will have the opportunity to challenge the factual findings contained in the [R]eport and admitting the [R]eport into evidence will not diminish [Five Star's] ultimate safeguard, 'the right to present evidence tending to contradict or diminish the weight of [the Report's findings].'" *See Thibodeaux v. WellMate*, No. CIV.A. 12-1375, 2014 WL 1329802, at *3 (E.D. La. Mar. 31, 2014) (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167–68 (1996)).

## B.    Sixteen Employee Questionnaires

In his affidavit, Mr. Palacios asserts that in March 2017, after the commencement of the instant action, "Five Star asked both current employees who are on the DOL's list, as well as some former employees it was able to locate, to complete a voluntary questionnaire/declaration stating whether the employees are owed any overtime for off-the-clock time worked."  LP Aff. 4.  Palacios further asserts in his affidavit that sixteen current and former employees "voluntarily provided

28

questionnaire responses and declarations." *Id.* at 4.  Five Star attaches the sixteen documents, each labeled "Time Keeping and Payroll Questionnaire" ("Payroll Questionnaire"), to Luis Palacios's affidavit in support of its Motion.  *See* LP Aff.  The sixteen Payroll Questionnaires are signed by current and former Five Star construction employees included in the DOL's List and contain the following pertinent questions:

1. From July 1, 2013 to the present time, have you ever performed any work at the start of the work day that was left off your time card?

2. From July 1, 2013 to the present time, have you ever performed any work at the end of the work day that was left off your time card?

3. From July 1, 2013 to the present have you included the time spent loading the truck or unloading the truck on your time card as part of your hours worked?

4. From July 1, 2013 to now, are you owed any wages for work performed off-the-clock or that was not included on your time chard [sic]?

*See id.*

   All sixteen employees who signed a Payroll Questionnaire answered "no" to the first two questions, "yes" to the third question, and "no" to the fourth question.  Each Payroll Questionnaire also provides

29

that "Five Star's only request is that [the employee] be completely truthful in [their] responses and sign" the Payroll Questionnaire. *Id.* The Payroll Questionnaire further provides that "Five Star will absolutely not retaliate against any employee based on their responses to [the] questionnaire." *Id.* Finally, each Payroll Questionnaire contains the following language at the end: "I voluntarily completed this form. No one forced me to complete this form, and no one told me what to write as my responses. I declare and certify under penalty of perjury that the information provided on this form is true and correct." *Id.*

In light of the employees' responses to the Payroll Questionnaires, Five Star now requests that the Court "dismiss any claims by the DOL on behalf of the 16 employees who provided voluntary declarations affirming they did not work unpaid time and are not owed any wages or overtime by Five Star." Mot. 12.

After Five Star filed its Motion, the DOL filed an "Emergency Motion for a Protective Order," claiming that Palacios and Cobian required that the sixteen employees answer and sign the Payroll Questionnaires. Secretary's Emergency Mot. for Protective Order 1–2,

May 9, 2017, ECF No. 26 [hereinafter "Motion for Protective Order"].   In

its Motion for Protective Order, the DOL asserted that the employees

who signed the Payroll Questionnaires did so involuntarily and that

questionnaires contained false and inaccurate information.   *See*

*generally* Mot. for Protective Order.   In support of these contentions, the

DOL submitted the "Declaration of Sandra Alba."   Mot. for Protective

Order Ex. 1 [hereinafter "Declaration"].   Investigator Alba's Declaration

is based upon employee statements to her about the circumstances

under which the questionnaires were signed.

In its Motion for Protective Order, the DOL requested, inter alia,

that the Court (1) prevent Five Star from terminating or retaliating

against employees, (2) require Five Star to provide the employees

involved in the litigation with notice regarding their right to speak to

wage and hour investigators and their right to be free from retaliation,

and (3) strike the sixteen "involuntary, coerced, false statements that

. . . Five Star . . . attached as evidence to its Motion."   Mot. for

Protective Order 2.

In response, Five Star argued that the "DOL's serious accusations

[were] based on no more than anonymous hearsay, double hearsay, and

speculative/conclusory statements of opinion." Def.'s Resp. to [the DOL's] Mot. for Protective Order 2, May 16, 2017, ECF No. 32. Five Star further argued that there was "no evidence Five Star made threats or anyone's job is actually in jeopardy." *Id.* Five Star highlighted the "absence of a single statement or affidavit directly from an employee who believes he was coerced [or] retaliated against." *Id.* Additionally, Five Star attached another affidavit signed by Mr. Palacios ("Second LP Affidavit") (ECF No. 32-1) wherein Mr. Palacios avers that he did not and has not ever retaliated against any of the employees on the DOL List and that he did not instruct the employees on what to answer in the questionnaires besides asking them to answer the questions truthfully. Second LP Aff. 2.

The Court referred Five Star's Motion for a Protective Order to a United States Magistrate Judge who granted in part and denied it in part. Order Granting Mot. to Compel and Granting in Part [the DOL's] Mot. for Protective Order, May 30, 2017, ECF No. 44. Specifically the Magistrate Judge denied all relief requested except for the request that Five Star provide employees with the notice of their rights. *Id.* at 12. Regarding the DOL's argument that the statements should be stricken,

the Magistrate Judge found that this request for relief was "overly broad, and beyond the scope of the matters referred." *Id.*

The DOL reasserts its argument that the Court should strike the sixteen employee questionnaires, and for the same reasons, in its Response to Five Star's Motion. The Court, at present, will not strike the Payroll Questionnaires; however, the Court will not grant summary judgment in Five Star's favor regarding these employees at this time either. The Court concludes that there is a genuine issue of material fact regarding whether these employees were properly compensated despite their signed questionnaires. Namely, Investigator Alba's Declaration arguably casts doubt on the validity, voluntariness, and accuracy of the signed Payroll Questionnaires.

However, as Five Star correctly asserts, Investigator Alba's Declaration providing that the Payroll Questionnaires are false and were coerced is based upon hearsay and double hearsay statements. "As a general rule, an affidavit consisting purely of hearsay generally does not comply with [Federal Rule of Civil Procedure 56] and is insufficient to demonstrate a genuine issue for trial." 27A Fed. Proc.

§ 62:653 (citing Fed. R. Civ. P. 56) (collecting cases). "There is a necessary corollary to this principle, however, which recognizes that there is often a potential hearsay element to affidavits submitted in connection with summary judgment motions . . . which can readily be cured at trial by simply calling the declarant referred to in this affidavit." *Styer v. Frito-Lay, Inc.*, No. 1:13-CV-833, 2015 WL 999122, at *2–3 (M.D. Pa. Mar. 6, 2015). To be sure, some courts have held that "hearsay in an affidavit made by someone other than the affiant can be considered on summary judgment if it appears that the declarant would be available at trial to provide direct testimony on the matter." *Id.* (collecting cases); *see e.g., McCann v. Astrue*, 293 F. App'x 848, 851 (3d Cir. 2008).

Here, the DOL's pretrial witness list includes three of the sixteen individuals who signed the questionnaires. Pl.'s Pretrial Submissions 4–5, June 9, 2017, ECF No. 48. Additionally, Five Star's pretrial witness list includes all sixteen of the employees who signed the questionnaires as potential witnesses. Five Star['s] . . . Pretrial Local Rule 16(e) Materials App. Def. Five Star['s] Trial Witness List, June 9, 2017, ECF No. 45-1. Moreover, Five Star claims

34

that it will "call some of these individuals to testify about the subject matter covered in their questionnaires/declarations provided to the Court as evidence in support of Five Star's [M]otion." *Id.* at 2. Accordingly, the hearsay problems presented in Investigator Alba's Declaration can be cured during trial because the declarants referenced within it can be called to testify. The Court will, therefore, consider Investigator Alba's Declaration.

In her Declaration, Investigator Alba informs the Court that she spoke directly with several employees who had signed the Payroll Questionnaires. Investigator Alba does not, however, provide the names of the employees with whom she spoke because the employees "are not willing to come forward with their names and are afraid that their identities and statements may be revealed to Five Star." Therefore, Investigator Alba refers to the employees by number only to "protect" them from "potential retaliation." Investigator Alba further asserts that she has, and is prepared to provide to the Court, additional information regarding the employees designated by each number. Investigator Alba's Declaration, based on interviews with employees who signed the Payroll Questionnaires, indicates the following

35

regarding the circumstances under which the Payroll Questionnaires were signed:

- Palacios and Cobian required that all construction employees report to an office within the Five Star facility. Declaration ¶¶ 7–8, 11, 16, 20, 28, 31.

- Many of the construction employees were called into the office in groups of six or seven. *Id.* at ¶¶ 7, 9, 11, 25.

- Palacios and Cobian provided the construction employees with forms to sign and required that the construction employees return the signed forms to them before the end of the workday. *Id.* at ¶¶ 7, 8, 11, 16, 20, 28, 31.

- The forms indicated that the employees had been properly compensated for all hours worked, that the employees began their day at 7:00 a.m. and ended their day at 3:30 p.m., and that the employees were not owed any money. *Id.* at ¶¶ 7–8, 13, 17, 24.

- Palacios and Cobian orally translated the written information provided in the forms into Spanish for employees who did not understand English. *Id.* at ¶¶ 9, 13, 16–17, 21, 32.

- Palacios and Cobian dictated the responses that the employees should provide on the forms. *Id.* at ¶¶ 13, 16–17, 22, 28, 32.

- Palacios and Cobian were overseeing the employees as they filled out the forms to ensure that the information coincided with the information Palacios and Cobian wanted reflected on the forms. *Id.* at ¶¶ 7, 9, 13, 22, 29, 31, 32.

- Palacios and Cobian required that some employees change their responses on the form, although the employees had originally answered truthfully, to reflect the responses that Palacios and Cobian desired. *Id.* at ¶¶ 14, 28, 32.

- The information the employees provided in the forms was false, and the employees did not agree with the responses Palacios and Cobian instructed them to provide. *Id.* at ¶¶ 7, 9, 13, 17, 23, 25, 29–30;

- Some employees reported to Investigator Alba that they wrote the responses that Palacios and Cobian dictated to them because they feared their job was in jeopardy. *Id.* at ¶¶ 9, 17, 23.

In sum, Investigator Alba's Declaration indicates that the construction employees "answered in the manner they were instructed to do [sic] by Luis Palacios and Jorge Cobian, possibly out of fear, or simply because they didn't know what they were signing." *Id.* at ¶ 33.

After considering Investigator Alba's Declaration and the Second Palacios Affidavit, which present conflicting facts, the Court determines that there is genuine issue of material fact regarding whether (1) the responses provided in the Payroll Questionnaires are truthful, or are the result of undue influence and fear of retaliation and, consequently, whether (2) these sixteen employees were actually properly compensated for all overtime hours worked. Certainly if the DOL fails to produce the employees to whom Investigator Alba refers in her declaration as witnesses, or if there is no other evidence that the questionnaires are not truthful and voluntary, the Court may consider

granting judgment as a matter of law in favor of Five Star regarding these sixteen employees.

## C.    De Minimis Time

Alternatively, Five Star contends that "even if there were some loading and unloading activities that were not recorded on the time cards, the time must nevertheless be disregarded as de minimis." Mot. 12.

"The de minimis rule provides that an employer, in recording working time, may disregard 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as practical administrative matter be precisely recorded for payroll purposes.'" *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) (quoting 29 C.F.R. § 785.47); *see also Chambers v. Sears Roebuck and Co.*, 428 F. App'x 400, 414 (5th Cir. 2011). "The courts have held that such trifles are de minimis." § 785.47 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)). However, the de minimis rule only applies "where there are uncertain and indefinite periods of time involved of a few seconds or minutes in duration, and where the failure to count such time is due to considerations justified by industrial realities." *Id.*

Courts consider the following factors in determining whether an activity is de minimis: (1) the practical administrative difficulty of recording the time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work.

Here, Five Star argues that "to the extent there is any loading at the start of the day, it generally takes a brief amount of time, less than one to two minutes." Mot. App. 7.  According, to Five Star, "[t]he longest it has ever taken to load a truck for the day is five minutes." Moreover, Five Star contends that "[i]f there is any loading or unloading that takes more than a minute or two, it is considered paid time and included on the employee's time cards and the employees are paid for it." Five Star further asserts that [e]mployees are paid for time driving trucks from the yard and back to the yard." Five Star cites to Palacio's affidavit to support these factual assertions.  If Mr. Palacios assertions are true, Five Star is correct that such time is de minimis.  *See Von Friewalde v. Boeing Aerospace Operations*, Inc., 339 F. App'x 448, 454 (5th Cir. 2009) ("[M]ost courts have found daily periods of approximately 10 minutes de minim[i]s even though otherwise compensable.").

However, as outlined above, Investigator Alba's Report indicates that construction employees spent an average of fifteen minutes at the Five Star facility loading company vehicles with materials in preparation for their work at the job sites. Alba Dep. 50. Additionally, Investigator Alba discovered that employees spent an average of half an hour returning company equipment to the Five Star facility. *Id.* at 34. Consequently, as mentioned above, Investigator Alba determined that construction employees were not compensated for an average of 3.75 hours of overtime a week—such time is not de minimis. *See Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 693, 716 (E.D. Tex. 2007) (holding that daily periods of fifteen minutes were not de minimis); *Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 708, 719 (2nd Cir. 2001) (holding the same).

Consequently, given the conflicting facts presented in the Palacios Affidavit and the Report and Investigator Alba's deposition testimony, the Court finds that there is a genuine issue of material fact regarding whether the time for which Five Star allegedly did not compensate construction employees, if any, is de minimis.

### D.   Plaintiff's Motion to Amend Exhibit A to the Complaint (DOL List)

In its Motion, Five Star requests that the Court dismiss the DOL's claims related to the two "shop employees" included in the DOL List: Efrain Luna and Everisto Guillen.  Mot. 12.  The DOL thereafter filed its "Motion to Amend Exhibit A to the Complaint" ("Motion to Amend") (ECF No. 47) wherein the DOL requests that the Court allow it to amend the DOL List to "remove two employees, Evaristo Guillen and Efrain Luna, based on [Five Star's] representation that these individuals are not in the job categories affected by the violations in the Complaint."  The DOL also requests that it be allowed to add former employee Jose Montes, who was inadvertently omitted, to the DOL List. In its Motion to Amend, the DOL indicates that Five Star "is not opposed to [the DOL] removing the two employees based on [Five Star's] representation, but is opposed to the addition of the one employee inadvertently excluded" from the original DOL List.  Despite the DOL's representation regarding Five Star's position, Five Star has failed to file a written response to the Motion to Amend as of the date of this order.

41

Given that the DOL's request to amend the DOL List is unopposed, the Court will grant it. Accordingly, Five Star's Motion requesting that the Court grant summary judgment as to the two shop employees is denied as moot.

Regarding the DOL's request to add an additional former employee to the DOL list, the Court concludes that the request should similarly be granted because Five Star has failed to timely respond to the Motion to Amend and indicate its reasons for opposing the addition. Moreover, the Court concludes that good cause exists for allowing the DOL to add the former employee: while the DOL's explanation for untimely filing its Motion to Amend at this late stage of the litigation is not particularly persuasive, the Court concludes that the amendment is important because it will directly affect the former employee's ability to recover, if warrented, and because Five Star will not be unduly prejudiced as a result of the amendment because the DOL provided Five Star with the additional employee's witness statement as the same time as all other witness statements. *See S&W Enter., L.L.C. v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 535 (5th Cir. 2003) (In determining whether good cause exists, courts consider "(1) the movant's explanation

42

for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.").

Accordingly, **IT IS ORDERED** that Defendant Five Star Automatic Fire Protection's "Motion for Summary Judgment" (ECF No. 22) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor's "Motion to Amend Exhibit A to the Complaint" (ECF No. 47) is **GRANTED**.

SIGNED this ___24___ day of **July, 2017**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE

43