UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF LABOR, R. ALEXANDER ACOSTA, SECRETARY OF LABOR; | § § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-16-CV-00282-LS |
| FIVE STAR AUTOMATIC FIRE PROTECTION, LLC, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Five Star is an El Paso company that installs and maintains building fire sprinkler systems. The Department of Labor ("DOL") alleges that from September 23, 2013, through September 30, 2015, Five Star violated the Fair Labor Standards Act because it did not pay certain employees for pre-shift and post-shift work, and also improperly calculated overtime pay for certain employees. Five Star does not dispute that the FLSA covers it and the employees at issue, and does not contest this Court's jurisdiction.

**The Law**

The FLSA "requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek."[1] When the Secretary of Labor "bring[s] an action by or on behalf of any employee" to recover unpaid wages or overtime compensation[2] he bears "the burden of proving that [the employee] performed work for which [the employee] was not properly compensated."[3] Ordinarily, this burden is satisfied using the employer's own time records.[4]

---

[1] *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 282 (5th Cir. 2014) (citing 29 U.S.C. § 207(a)(1)).
[2] 29 U.S.C. § 216(c).
[3] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. E.d 2d. 1515 (1946).
[4] *Id*. at 687.

"But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes…[the] employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[5] The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence negating the reasonableness of the inference drawn from the employee's evidence.[6] "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."[7]

In cases involving multiple workers, not all workers need testify. "Estimates may come from representative testimony, and the '[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.'"[8]

**The Evidence**

Former foreman Seth Palacio worked at Five Star from January 2007 through May 2015.[9] He testified that he was required to be at work at 6:30 a.m., even though his eight-hour workday was from 7:00 a.m. to 3:30 p.m.[10] Palacio testified that supervisor Jorge Cobian mandated that Palacio arrive at work by 6:40 a.m,[11] and 6:50 a.m. was late.[12] Indeed, Palacio had to work alone on a project one day because Cobian sent Palacio's helper home for arriving only a few minutes

---

[5] *Id*.
[6] *Id*. at 687-88.
[7] *Id*. at 688.
[8] *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (quoting *Beliz v. W.H. McLeod & Sons Packing Co*., 765 F.2d 1317, 1331 (5th Cir. 1985).
[9] ECF No. 84, at 44.
[10] *Id*. at 42-43.
[11] *Id*. at 49-50.
[12] *Id*. at 53.

before 7:00 a.m.[13] All foremen, sprinkler fitters, and helpers would try to arrive at 6:30 a.m. because of Cobian's 6:50 a.m. deadline.[14] Palacio arrived at 6:30 a.m. to load materials onto his work truck,[15] which typically took ten to fifteen minutes.[16] Once loaded, Palacio would leave for the project site ten to fifteen minutes before 7:00 a.m.[17] In the afternoons, Palacio would leave the worksite at 3:30 p.m. in the company truck and arrive at Five Star between 3:45 p.m. and 4:00 p.m.[18]

Palacio testified that he recorded eight hours per day for timesheet purposes, which reflected his work from 7:00 a.m. to 3:30 p.m., with a thirty minute lunch.[19] Palacio testified he was not paid for the work done before 7:00 a.m.,[20] nor for driving from the worksite to Five Star at the end of the workday.[21]

Dagoberto Gonzalez worked at Five Star from April 2012 through August 2017,[22] starting as a laborer and eventually moving up to foreman in charge of installing underground water systems that support interior fire sprinklers.[23] His set paid workday was 7:00 a.m. to 3:30 p.m., but he actually began working between 6:30 a.m. and 6:45 a.m.[24] He testified "the latest we could start the day would be 6:45 a.m.,"[25] and he was in trouble several times with Cobian for being "late." In fact, Cobian sent two other Five Star employees home for arriving between 6:45

---

[13] *Id.* at 50-52.
[14] *Id.* at 53.
[15] *Id.* at 55.
[16] *Id.* at 60.
[17] *Id.* at 60-61.
[18] *Id.* at 63.
[19] *Id.* at 64.
[20] *Id.* at 68.
[21] *Id.* at 69.
[22] *Id.* at 113.
[23] *Id.* at 112-113.
[24] *Id.* at 114-15.
[25] *Id.* at 114.

a.m. and 6:50 a.m.[26] Gonzalez echoed Palacio's testimony that Cobian forbade crews from returning to Five Star before 3:30 p.m., and he was not paid for driving time after 3:30 p.m.[27] When Gonzalez approached Cobian about the unpaid time before 7:00 a.m., Cobian told him that work started at the jobsite, not at the shop.[28]

Fernando Elias was a Fire Star sprinkler fitter foreman from July 2008 to March 2015.[29] Cobian instructed Elias to arrive at work no later than 6:40 a.m.,[30] and to leave the project site no earlier than 3:30 p.m.,[31] resulting in a return to Five Star usually between 4:00 p.m. and 4:15 p.m.[32] When Elias filled out his timesheet, however, it represented a work schedule of 7:00 a.m. to 3:30 p.m. because he believed that is all he would be paid for.[33] Other than receiving a sample timesheet when he was initially hired, no one at Five Star taught Elias how to fill out his timesheet.[34]

Pipe installer helper Lorenzo Acosta worked for Five Star from July 2008 to March 2015.[35] Cobian instructed Acosta to arrive at Five Star at 6:30 a.m., and to leave to the project site at 3:30 p.m.[36] Acosta testified that he would sometimes go to work earlier than 6:30 a.m. to load material onto the truck.[37] Acosta explained that almost all other employees were at Five Star at 6:30 a.m., and that they would all load the work trucks for twenty-five to thirty minutes.[38] Acosta's timesheet reflected only the eight work hours from 7:00 a.m. to 3:30 p.m. because that

---

[26] *Id.* at 116.
[27] *Id.* at 122-23.
[28] *Id.* at 124-25.
[29] *Id.* at 202-203.
[30] *Id.* at 209.
[31] *Id.* at 217-18.
[32] *Id.* at 213.
[33] *Id.* at 216.
[34] *Id.* at 216-17.
[35] ECF No. 85, at 7-8.
[36] *Id.* at 8.
[37] *Id.* at 8-9.
[38] *Id.* at 9-11.

is the period for which Cobian said he could be paid.[39] His timesheets did not include work before 7:00 a.m. or the return to Five Star at 4:00 - 4:10 p.m.[40] Cobian taught Acosta how to fill out his timesheet,[41] and explicitly told Acosta he would not be paid for work performed before 7:00 a.m. or after 3:30 p.m.[42]

Pipe installation helper Jonathan Hernandez worked at Five Star from June 2013 through February 2015.[43] He arrived for work at Five Star at 6:30 a.m. per Cobian's instructions, and left for the day after 4:00 p.m.[44] Cobian instructed Hernandez to put only put eight hours on his timesheet per day,[45] and made Hernandez generate a new timesheet when Hernandez tried to claim the time he worked before 7:00 a.m.[46]

Foreman Jorge Hernandez worked at Five Star from December 2011 through September 2015.[47] Hernandez arrived for work in the mornings at 6:30 a.m.[48] per Cobian's instructions.[49] The eight hours on his timesheet represented 7:00 a.m. to 3:30 p.m., because that is what a Five Star foreman taught him to do when he was hired.[50] Hernandez asked Cobian why he was not paid for work before 7:00 a.m., and Cobian answered that Hernandez was to be paid for eight hours daily.[51]

---

[39] *Id.* at 11-12.
[40] *Id.* at 13.
[41] *Id.* at 13.
[42] *Id.* at 37-38.
[43] *Id.* at 45, 48.
[44] *Id.* at 46.
[45] *Id.* at 52.
[46] *Id.* at 52-54.
[47] *Id.* at 81.
[48] *Id.* at 83.
[49] *Id.* at 82.
[50] *Id.* at 88.
[51] *Id.* at 89.

As Five Star's payroll clerk since 2011,[52] Mary Anne Morales collects employee time-sheets and generates a spreadsheet that is used to calculate employee pay.[53] She testified that a new employee's assigned foreman teaches him how to fill out his timesheet, and that Cobian taught the foremen.[54] She also testified that if an employee's timesheet reflected five eight-hour workdays, she would not know whether those forty hours included time working before 7:00 a.m. or after 3:30 p.m.[55]

Sandra Alba, a Department of Labor wage and hour investigator, testified that employers must pay employees time and half their regular rate for work in excess of forty hours per week.[56] If an employee works at two or more rates of pay during a single workweek, overtime pay cannot be based on the lower regular rate, but must be based on a "weighted average."[57] Employers are also required to maintain and keep accurate and complete employee payroll records.[58]

Alba began investigating Five Star in September 2015.[59] Five Star vice president and owner Veronica Palacios told Alba the company's construction employees worked from 7:00 a.m. to 3:30 p.m., with thirty minutes for lunch.[60] Five Star did not, however, actually keep track of when an employee started and ended his workday.[61] With no accurate records to calculate back pay due, Alba based her calculations on employee interview "averages." Arrival times at

---

[52] *Id*. at 128.
[53] *Id*. at 130-31.
[54] *Id*. at 137-38.
[55] *Id*. at 143.
[56] ECF No. 86, at 8.
[57] *Id*. at 9.
[58] *Id*.
[59] *Id*. at 12.
[60] *Id*. at 14.
[61] *Id*.

Five Star ranged from 6:30 a.m. to 6:55 a.m.,[62] and departure times ranged from 3:40 p.m. to 4:30 p.m.[63]

With an average of fifteen and thirty unpaid minutes in the morning and afternoon, respectively, Alba calculated that each subject employee was underpaid three hours and forty five minutes per week.[64] She later adjusted this figure and removed the unpaid afternoon thirty minutes from the laborers and helpers, because they probably drove straight home from the worksite.[65] Only the foremen and sprinkler fitters kept the unpaid afternoon thirty minutes. She adjusted downward further to take into account an average of four weeks per year for vacation and holidays.[66]

On cross examination Alba conceded there may be problems in her methodology. For example, employees might work some days at the Five Star shop or at a nearby ranch and would leave at 3:30 p.m.[67] On hot summer days, employees might work 6:00 a.m. to 2:30 p.m,[68] and employees regularly worked night projects where they would be allowed to drive straight to the worksite and/or drive straight home. Other employees may have worked under forty hours, or no hours, in particular weeks, and thus fail to engage the overtime rules.[69]

Jorge Cobian is Five Star's lead supervisor.[70] He denied ever telling any employee to be at work at 6:30 a.m., with no pay until 7:00 a.m.[71] According to Cobian, work schedules varied

---

[62] *Id*. at 97.
[63] *Id*. at 99.
[64] *Id*. at 43-44.
[65] *Id*. at 44.
[66] *Id*. at 45.
[67] *Id*. at 106.
[68] *Id*. at 109.
[69] *Id*. at 121, 129-31.
[70] *Id*. at 206-07.
[71] *Id*. at 229.

according to the general contractors' schedules.[72] Cobian had no role with respect to employee timesheets,[73] and never told any employee to add or subtract time from his timesheet.[74] During the relevant time period crews would return to Five Star from 2:50 p.m. to 3:45 p.m.[75] If crews returned at 4:00 p.m., 4:15 p.m., or 6:00 p.m., they should record have recorded that time.[76] Cobian denied disciplining employees for being late.[77]

Luis Palacios, Five Star's founder and president, testified that employees are to record all hours worked.[78] He testified that Five Star works twenty-four hours per day, seven per days per week, and that there is no set schedule because of the need to accommodate the general contractors' schedules.[79] Five Star crews also regularly work out of town and stay in hotels in Albuquerque, Alamogordo, and Truth or Consequences, all in New Mexico.[80] For projects closer, such as in Las Cruces, New Mexico, the crews will drive back every day and are paid for the travel time.[81] The typical workweek is Monday through Friday, but some employees work four days per week.[82] Palacios testified about several projects within the relevant time period that were close to Five Star with presumably short driving times back.[83]

---

[72] *Id*. at 232.
[73] *Id*. at 242.
[74] *Id*. at 243.
[75] Id. at 251.
[76] *Id*. at 252.
[77] *Id*. at 253.
[78] ECF No. 87, at 16-17.
[79] *Id*. at 18, 21-22.
[80] *Id*. at 37.
[81] *Id*. at 39.
[82] *Id*. at 45.
[83] *Id*. at 97-104.

**Factual Conclusions Bearing on Liability**

Pursuant to the parties' request that I make preliminary factual determinations bearing on liability, I find based on the witness testimony and exhibits admitted at trial:

1. When the Five Star employees at issue were working a typical 7:00 a.m. to 3:30 p.m. day shift, they were required to be at Five Star no later than 6:45 a.m., and were not compensated for the pre-shift time from 6:45 a.m. to 7:00 a.m.

2. When the Five Star employees at issue were working a typical 7:00 a.m. to 3:30 p.m. day shift, they were required to leave the project site no earlier than 3:30 p.m. Travel time from the worksite back to Five Star, if any, was not compensated.

3. The parties do not dispute the face of the record violations when an employee worked two or more rates during an overtime week, nor the arithmetic errors in calculating the number of overtime hours worked.

4. Five Star, for the time period in question, failed to keep accurate records of off-the-clock time that its employees worked.

The parties have requested an opportunity to submit briefing on potential damages. A status conference on this matter will be set within the next two weeks.

**SIGNED and ENTERED** on September 28, 2018.

_____
**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**