

FILED

SEP 30 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

R. ALEXANDER ACOSTA, SECRE-
TARY OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

    Plaintiff,

v.                                 EP-16-CV-00282-LS

FIVE STAR AUTOMATIC FIRE
PROTECTION, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER ON DAMAGES

After a bench trial I found that Five Star, during the relevant time period, did not compensate its employees for pre-shift work from 6:45 a.m. to 7:00 a.m., and for travel time from the worksite back to Five Star after 3:30 p.m.[1] I also found that Five Star failed to keep accurate records of off-the-clock time that its employees worked. The parties submitted briefs regarding their respective positions on damages. I agree with DOL's computation of damages for uncompensated time and find that Five Star has not met its burden to overcome liquidated damages.

**Uncompensated Time**

Sandra Alba, DOL's wage and hour investigator assigned to the Five Star investigation, submitted a declaration[2] explaining her post-trial revised backwages calculation. Consistent with the evidence presented during trial, this recalculated figure incorporates fifteen minutes of pre-shift uncompensated time for all affected employees, and an additional thirty minutes of uncompensated time for affected foremen who drove worktrucks back to Five Star after 3:30 p.m. She verified whether these figures caused any employee to work more than forty hours on any

---

[1] ECF No. 91 ("Memorandum Opinion and Order"), at 9.
[2] ECF No. 96-1.

particular week, omitted holiday weeks because employees were not likely to reach forty hours, and omitted workdays where Five Star's records show that an employee worked the full day at Five Star or at the Five Star president's nearby ranch. This methodology, utilizing the records that Five Star was able to provide, generated backwages in the amount of $121,687.37. An additional amount for undisputed face-of-the record-violations totals $2,604.35.

Five Star's president submitted a declaration[3] asserting that backwages total no more than $44,103.41. Relying exclusively on his personal review of the handwritten employee timesheets,[4] he claims to be able to reduce pre-shift and post-shift backwages due by taking into consideration a number of factors, including work on projects that were out of town, days off (i.e., for holidays, illness), night work, worksite location, and whether the employee drove to the worksite. For example, if an employee worked a night shift, there should be no pre-shift or post-shift backwages due because the employee ostensibly reported directly to and left directly from the worksite, bypassing the Five Star shop altogether.[5] The timesheets, however, do not indicate the particular hours an employee worked, and do not reflect whether the work was done at night or during the day.

In reviewing a typical timesheet from July of 2015,[6] the employee worked fifteen hours on Monday at three different locations, including four hours at the Five Star shop. The timesheet itself does not reflect whether any of the work was done at night. It also does not reflect whether the employee reported first to Five Star for four hours of work (which would qualify for fifteen minutes of unpaid pre-shift time), nor whether he returned to Five Star at 4:00 p.m. or later (which would

---

[3] ECF No. 95-1.
[4] *Id.* at 1, ¶3 ("I have personally reviewed the hand-written time sheets for the period of time at issue in this case...").
[5] *Id.* at 2.
[6] ECF No. 74-14, at 132.

2

qualify for thirty minutes of unpaid post-shift time if the employee was a foreman). Indeed, that day, the employee could have worked an entire night shift starting at midnight, return home to sleep for eight hours, and drive directly to the other two worksites, for which there would be no pre-shift or post-shift unpaid time. Five Star's timesheets simply do not allow for the retrospective analysis its president proffers, and given that he relied exclusively on the timesheets in generating his backwages figure, his methodology lacks reliability.

Again, the FLSA "requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek."[7] When the Secretary of Labor "bring[s] an action by or on behalf of any employee" to recover unpaid wages or overtime compensation[8] he bears "the burden of proving that [the employee] performed work for which [the employee] was not properly compensated."[9] Ordinarily, this burden is satisfied using the employer's own time records.[10] "But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes...[the] employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[11] The burden then shifts to the employer to produce evidence of the precise amount of work performed or evidence negating the reasonableness of the inference drawn from the employee's evidence.[12] "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."[13]

---

[7] *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 282 (5th Cir. 2014).
[8] 29 U.S.C. § 216(c).
[9] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. E.d 2d. 1515 (1946).
[10] *Id.* at 687.
[11] *Id.*
[12] *Id.* at 687-88.
[13] *Id.* at 688.

3

In cases involving multiple workers, not all workers need to testify. "Estimates may come from representative testimony, and the '[t]estimony of some employees concerning the hours worked by groups of non-testifying employees is sufficient if those who do testify have personal knowledge of the work performed by those who do not.'"[14]

Five Star's records are inaccurate and inadequate. Employees simply listed the number of hours worked at a particular worksite, on a particular day, without any reference to when the work was performed and in which order the employee worked that day's worksites. DOL's Alba used the Five Star records as best she could, with sound methodology, to show the amount and extent of unpaid work, overtime, and backwages due, "as a matter of just and reasonable inference." Moreover, Five Star did not meet its shifted burden to produce evidence of the *precise* amount of work performed and did not negate the reasonableness of the inferences drawn from the DOL's evidence. I therefore find that backwages due amount to $121,687.37, and that the undisputed face-of-the record violations total $2,604.35.

**Liquidated Damages**

The FLSA provides that an employer who violates the overtime provisions is liable for the unpaid overtime compensation and "an additional equal amount as liquidated damages."[15] Liquidated damages are compensatory, not punitive, and "constitute[] compensation for the retention of a work[er]'s pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages."[16] A court can reduce or decline to aware such damages if it concludes the employer acted in "good faith" and "had reasonable grounds" to believe its actions

---

[14] *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (quoting *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1331 (5th Cir. 1985).
[15] 29 U.S.C. § 216(b).
[16] *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 707, 65 S. Ct. 895, 89 L. Ed. 1296 (1945).

complied with the FLSA.[17] An employer, however, "faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA."[18] Even if the district court determines the employer acted in good faith and had a reasonable belief its actions were legal, the court may still award liquidated damages.[19]

DOL does not allege that Five Star failed to pay overtime altogether. Indeed, there are no allegations in this case that Five Star improperly withheld overtime pay for hours that employees claimed on their timesheets. Five Star paid its employees nearly $500,000.00 in overtime[20] during the relevant time period, and the timesheets presented at trial and in the record reflect that employees routinely entered more than forty hours on their weekly timesheets. The employee in the example timesheet explained above worked and claimed fifty-seven hours that week.[21]

The problem in this case is that employees were not including the pre-shift and post-shift work at issue on their timesheets. DOL witness and former Five Star foreman Seth Palacio testified that he "think[s] it was [Five Star supervisor Jorge] Cobian" who told Palacio how to fill in his timesheet, but also testified "[t]hat's how we started filling it out, and that's how we always filled it out."[22] He reiterated that no one told him to include on his timesheet "time…spent working in the morning before 7:00 a.m."[23] Similarly, former Five Star foreman Fernando Elias testified that no one at Five Star taught him how to fill out his timesheet, and he believed he could only be paid for work he did from 7:00 a.m. to 3:30 p.m.[24] Elias testified that he never asked anyone about

---

[17] 29 U.S.C. § 260.
[18] *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003) (internal quotes omitted).
[19] *Bernard v. IBP, Inc.* 154 F.3d 259, 267 (5th Cir. 1998).
[20] ECF No. 95-2, at 8.
[21] ECF No. 74-14, at 132.
[22] ECF No. 84, at 66.
[23] *Id.* at 67.
[24] *Id.* at 216-17.

getting paid for pre-shift time and he filled out his timesheet the way he did out of "ignorance."[25] Former Five Star foreman Dagoberto Gonzalez did not include the pre-shift and post-shift time on his timesheets because a "colleague" whose name he does not remember taught him that way.[26] Gonzalez testified that Cobian told him that "the work started at 7:00 at the job site, not at the shop, that you would have to paid once you were at the – at the site."[27]

Five Star employee Lorenzo Elias-Acosta testified that Cobian taught Elias how to fill out his timesheet, explicitly told Elias he would only be paid for work performed from 7:00 a.m. to 3:30 p.m.,[28] and explicitly told Elias that he would not be paid for work done before 7:00 a.m. and after 3:30 p.m.[29] Cobian also taught former Five Star employee Jonathan Hernandez how to fill out his timesheet.[30] When Hernandez tried to claim on his timesheet work that began at 6:30 a.m., Cobian made him generate a new timesheet and told Hernandez he could only claim time from 7:00 a.m. onward.[31] Former Five Star employee Jorge Hernandez testified that several different foremen and other Five Star employees told him to include only work from 7:00 a.m. to 3:30 p.m. on his timesheet.[32] When Hernandez asked Cobian about getting paid for work done before 7:00 a.m., Cobian's response was that "work hours were eight hours daily."[33]

---

[25] *Id.*
[26] *Id.* at 124.
[27] *Id.* at 124-25.
[28] ECF No. 85, at 11-12.
[29] *Id.* at 37-38.
[30] *Id.* at 52.
[31] *Id.* at 52-54.
[32] *Id.* at 88.
[33] *Id.* at 89.

6

Five Star's payroll clerk processed the timesheets and generated employee pay.[34] She testified that Cobian taught the Five Star foremen how to generate timesheets, and the foremen in turn would teach the new Five Star employees.[35]

Five Star's president argues that the company acted in good faith and reasonably believed its conduct was lawful because it relied on employees to correctly report the hours they worked.[36] The Five Star employee manual provides that "all employees must record the exact time worked."[37] I find, however, that Five Star supervisor Cobian implemented and enforced a policy that forbade employees from including on their timesheets the pre-shift and post-shift time at issue. The evidence reflects he disseminated the policy directly to Five Star employees, and also through Five Star foremen who taught new employees how to generate their timesheets. Consequently, I cannot find that Five Star acted in good faith and had a reasonable belief that its actions were legal.

**Findings of Fact and Conclusions of Law**

The findings of fact in this order and in the order on liability[38] show:

1. Five Star does not dispute that the FLSA covers it and the parties do not contest this court's jurisdiction. The relevant time period is September 23, 2013 to September 20, 2015.

2. When the Five Star employees at issue were working a typical 7:00 a.m. to 3:30 p.m. day shift, they were required to be at Five Star no later than 6:45 a.m., and were not compensated for the pre-shift time from 6:45 a.m. to 7:00 a.m.

3. When the Five Star employees were working a typical 7:00 a.m. to 3:30 p.m. day shift, they were required to leave the project site no earlier than 3:30 p.m. Foremen and other employees

---

[34] *Id.* at 130-31.
[35] *Id.* at 137-38.
[36] ECF No. 95-2, at 2.
[37] ECF No. 75-1, at 3.
[38] ECF No. 91.

who drove back to Five Star from the project site were not paid for their travel time after 3:30 p.m. The average post-shift unpaid time was thirty minutes.

4. During the relevant time period, Five Star failed to keep accurate records of off-the-clock time that its employees worked.

5. DOL wage and hour investigator Sandra Alba submitted a revised post-trial backwage calculation that utilized sound methodology and the records that Five Star was able to provide. The backwage amount due is $121,687.37. An additional amount for undisputed face-of-the-record violations totals $2,604.35.

6. Five Star's proposed backwage figure of $44,103.41 is based on a review of the employee timesheets and a methodology that lacks reliability.

7. Five Star's failure to pay the affected employees for the pre-shift and post-shift work at issue was not in good faith nor based on a reasonable belief that its actions were legal.

The conclusions of law from this order and the order on liability show:

1. During the period of September 23, 2013 through September 20, 2015, Five Star violated the FLSA's overtime provisions by failing to pay its employees for the pre-shift and post-shift work at issue.

2. Five Star's FLSA violations were willful.

3. Five Star's employees should have been paid for the fifteen minutes of pre-shift time and the thirty minutes of post-shift time at issue.

4: Five Star failed to demonstrate its violations of the FLSA's overtime provisions were in good faith, and failed to show it had reasonable grounds to believe its actions were legal. Consequently, liquidated damages in an amount equal to the back wages due are appropriate in this case.

5. Based on the foregoing, Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor, shall recover against Defendant Five Star Automatic Fire Protection, LLC, on his FLSA claim in the amount of (1) $121,687.37 for unpaid backwages, (2) $121,687.37 in liquidated damages, and (3) $2604.35 for face-of-the record violations. A judgment will be filed contemporaneously.

**SIGNED and ENTERED** on September 30, 2019.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**